IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| **PANINI S.P.A., and** | : | CASE NO. |
| **PANINI NORTH AMERICA, INC.,** | | |
| | : | **Judge** |
| **Plaintiff,** | | |
| | : | **COMPLAINT** |
| v. | | |
| | : | **DEMAND FOR JURY TRIAL** |
| **BURROUGHS, INC.,** | | |
| | : | |
| **Defendant.** | | |
| | : | |

Plaintiffs Panini S.p.A. and Panini North America, Inc. (collectively referred to as "Panini") file this Complaint for patent infringement, breach of contract and unjust enrichment against Burroughs, Inc. and allege as follows:

### THE PARTIES

1. Plaintiff Panini S.p.A. is an Italian corporation with its principal place of business at Via Po 39, 10124 Torino, Italy.

2. Plaintiff Panini North America, Inc. is a Delaware corporation with its principal place of business at 577 Congress Park Drive, Dayton, Ohio 45459. Panini N.A. is a wholly owned subsidiary of Panini S.p.A.

3. On information and belief, Defendant Burroughs, Inc. is a Delaware corporation with its principal place of business at 41100 Plymouth Road, Plymouth, Michigan 48170. Burroughs may be served via its registered agent for service of process, CT Corporation System, 1300 East Ninth Street, Cleveland, Ohio 44114.

4. On information and belief, on or about February 1, 2010, Unisys Corporation spun off its entire Payment Systems business unit as Burroughs Payment Systems, Inc. Burroughs Payment Systems Inc. was later renamed Burroughs, Inc. On information and belief, Burroughs, Inc. succeeded to all relevant obligations and liabilities of Unisys Corporation related to the Unisys Payment Systems business unit. Throughout this Complaint, "Burroughs" is used to refer to: the Unisys Payments Systems business unit that was spun off of Unisys Corporation on or about February 1, 2010, Burroughs Payment Systems, Inc., and Burroughs, Inc.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) over the patent-infringement claim as it arises under the law of the United States relating to patents. And this Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Burroughs. Burroughs has conducted, and continues to conduct, extensive commercial activities within the State of Ohio and within the Southern District of Ohio, including in Montgomery County. For example:

- Burroughs negotiated and entered a contract with Panini North America, a resident of the Southern District of Ohio, in the Southern District of Ohio and did business with Panini North America in the Southern District of Ohio.

- On information and belief, Burroughs, directly or through intermediaries (including distributors, sales agents, and others) ships, distributes, offers for sale, sells, advertises, or uses its products, including SmartSource scanners, in the State of Ohio and in the Southern District of Ohio.

- On information and belief, Burroughs, directly or through intermediaries (including distributors, sales agents, and others), has purposefully placed one or more products, including the SmartSource scanners, into the stream of commerce with the expectation that the products will be purchased and used by customers in the State of Ohio, and in the Southern District of Ohio.  Accordingly, Burroughs has committed the tort of patent infringement within the State of Ohio, and within this Judicial District.

- Burroughs' commercial activities in the State of Ohio, and in the Southern District of Ohio, including its commercial activities with Panini, give rise to the causes of action in this suit.

7. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b) as a substantial part of the events or omissions giving rise to the claims occurred in this district and Burroughs committed acts of infringement in this district, as alleged in more detail below.

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

8. This case centers on check-scanning-and-processing technology.  From 2004 through 2009, Burroughs assembled, sold, and serviced a Unisys-branded version of Panini's My Vision X® scanner and Panini's associated Vision API application programming interface computer code.  Burroughs sold Panini's check scanners through an original equipment manufacturing agreement with Panini North America (the "OEM Agreement").

9. During the OEM relationship, and pursuant to the OEM Agreement, Panini shared confidential information with Burroughs.  Pursuant to the OEM Agreement, Burroughs was obliged to use Panini's confidential information solely to service the OEM relationship and to share with Panini any IP that it developed using any Panini confidential information.  During the

3

OEM relationship, and with the benefit of Panini's confidential information, Burroughs filed applications for patents on various check-scanning-and-processing technologies. Burroughs claimed as its own the applications and issued patents.

10. Also during the OEM relationship, and with the benefit of Panini's confidential information, Burroughs developed check scanners (branded "SmartSource") to replace and compete with Panini's My Vision X scanners. Burroughs' SmartSource scanner includes Panini technology used in Panini's My Vision X scanners and claimed in Panini S.p.A.'s U.S. Patent No. 6,966,554 (the "'554 Patent"), which issued in 2005.

11. During the entirety of the OEM relationship, Unisys Corporation owned U.S. Patent No. 6,546,396, entitled "Document Processing System with a Multi-Platform Application Programming Interface" (the "Burroughs Patent"), which issued in 2003.

12. Pursuant to the OEM Agreement, Burroughs was obliged to negotiate in good faith a license to Panini of any relevant Unisys Corporation/Burroughs intellectual property. The OEM relationship began in 2004 and ended on December 31, 2009. Burroughs not only never negotiated with Panini in good faith regarding a license to the Burroughs Patent—Burroughs never even raised or disclosed the existence of the Burroughs Patent to Panini during the six year OEM relationship.

13. In October 2012, Burroughs sued Panini North America in the Eastern District of Michigan for infringement of the Burroughs Patent, claiming for the first time that Panini's My Vision X and Vision API fall within the scope of the Burroughs Patent. The first time Burroughs had ever informed Panini of the Burroughs Patent or Panini's alleged infringement of the Burroughs Patent was when it sued Panini for patent infringement in the Eastern District of Michigan.

4

14. Burroughs breached the OEM Agreement through its misuse of Panini's confidential information and by failing to negotiate in good faith with Panini for a license to the Burroughs Patent.

15. Burroughs' SmartSource line of scanners developed through misuse of Panini confidential information also infringe Panini's '554 Patent.

16. Panini is entitled to recover for Burroughs' breach of the OEM Agreement and for Burroughs' infringement of Panini's '554 Patent. Panini is also entitled to injunctive relief in the form of an order barring Burroughs from asserting the Burroughs Patent, or any other intellectual property rights developed using Panini's confidential information, against Panini or Panini's customers. Panini is further entitled to injunctive relief in the form of an order barring Burroughs from disputing Panini's co-ownership claim in the intellectual property developed using Panini's confidential information, including patent applications and issued patents.

## PANINI'S CHECK-SCANNER TECHNOLOGY

17. Antonio Panini founded Panini S.p.A. in Turino, Italy in 1945. Today, Panini S.p.A. is a leading provider of document processing solutions, and in particular check scanners and processors. Panini S.p.A. designs, manufactures, and sells check scanners including the Vision X, I:Deal, and wI:Deal scanners. Panini also separately distributes to independent software vendors and application developers a proprietary application programming interface ("API"), the Vision API code.

18. Panini North America is the exclusive distributor of Panini products and services in the United States and Canada. Panini North America, a wholly owned subsidiary of Panini, S.p.A., was founded in Dayton, Ohio in 1995 to service the world's largest check market with Panini's innovative and highly regarded check scanners and processors.

5

1738592.1

19. From 1975 through 2002, Panini provided high-quality image-capture technology to help its clients manage their paper documents. Many banks used Panini's scanner technology to manage their checks. Typically, this technology was used on a branch-wide or region-wide basis. That is, the banks used the technology to process paper checks at a central processing station that serviced a bank branch or a number of branches in a given region.

20. In 2002, Panini S.p.A. began designing a check scanner that could be used to process checks at the point of receipt; i.e., the bank teller. This technology, dubbed the My Vision X, was designed specifically for check capture. The My Vision X went into production in September 2003 and was introduced to the market in early 2004. A picture of a Panini My Vision X is shown below:



21. As part of the My Vision X project, Panini designed its proprietary Vision API. The Vision API is provided to independent software developers ("ISVs"). ISVs incorporate the Vision API into their own proprietary document-processing applications and software that interface with Panini's scanners. Panini's Vision API was released in May 2003.

1738592.1

## PANINI'S PATENT-IN-SUIT
## UNITED STATES PATENT NO. 6,966,554

22. As part of Panini's My Vision X development, Ugo Panini and Pierpaolo Bubbio of Panini S.p.A. conceived of and reduced to practice innovative check-scanning technology. They applied for a U.S. patent on this technology on February 26, 2004, claiming priority to a February 27, 2003 Italian patent application. The Italian priority document pre-dates Panini's OEM Agreement with Burroughs. On November 22, 2005, United States Patent No. 6,966,554 (the "'554 Patent"), entitled "Apparatus for Scanning Bank Checks, With An Improved Check Feed Device," was duly and legally issued to inventors Ugo Panini and Pierpaolo Bubbio by the United States Patent and Trademark Office, after a full and fair examination. The inventors assigned the '554 Patent to Plaintiff Panini S.p.A., which continues to hold all rights, title and interest in the '554 Patent. A true and correct copy of the '554 patent is attached hereto as **Exhibit A** to the Complaint.

23. Ugo Panini and Pierpaolo Bubbio invented the technology claimed in the '554 Patent. At the time they invented the claimed technology, Mr. Panini was the CEO of Panini S.p.A. and Mr. Bubbio was the Director of R & D.

24. The '554 Patent discloses and claims a novel apparatus for scanning bank checks. One advantage of this technology is the ability to scan bundles of checks at one time. By way of example only, Claim 1 of the '554 Patent recites:

> A scanner apparatus for scanning bank checks, comprising:
> an input receptacle for receiving at least one check to be scanned;
> an image scanner device for scanning at least one of the faces of the check;
> an output receptacle for receiving the check after it has been scanned by the scanner device;

7

1738592.1

> a conveyor mechanism for conveying checks, one at a time, from the input receptacle to the output receptacle along a path extending in front of the scanner device;
>
> a feed device for picking up checks from the input receptacle and transferring them to the conveyor mechanism, wherein the feed device includes:
>
>> a feed plate movable in the input receptacle and associated with a thrust means for urging the plate resiliently towards an opposed fixed surface, the plate being able to reach a position remote from the surface in order to receive a bundle of checks between the plate and the surface; and
>>
>> a feed roller acting on the side remote from the plate in order to pick up from the input receptacle a check disposed adjacent the surface and to transfer the check towards the interior of the apparatus;
>
> wherein the feed plate is associated with a stop means for stopping the movement of the plate towards the opposed surface in a position close to that surface so as to define between the plate and the surface a gap of sufficient width for the insertion of at least one check in the input receptacle.

## THE PANINI—BURROUGHS OEM RELATIONSHIP

25. Burroughs learned of Panini's My Vision X check scanner in 2003. At the time, Burroughs did not have a viable teller-side scanner.

26. After learning of Panini's My Vision X scanner, Burroughs approached Panini S.p.A about reselling the Panini product. On or about October 21, 2003, Burroughs and Panini S.p.A. entered into a nondisclosure agreement under which Panini would share certain confidential information so that Burroughs could evaluate its interest in reselling Panini product.

27. On or about March 29, 2004, Burroughs and Panini North America entered into an original-equipment-manufacturer relationship (the "OEM Relationship") in which Burroughs assembled, sold, and serviced Panini's My Vision X check scanner under the Unisys brand at



1738592.1

and from its Plymouth, Michigan facility.  A picture of Burroughs' Unisys-branded My Vision X scanner is shown below:

28.     The OEM Relationship was governed by the OEM Agreement.  A true and correct copy of the OEM Agreement is attached as **Exhibit B**.

29.     Panini also provided Burroughs with Panini's proprietary Vision API and other confidential information, the use and distribution of which was governed by the OEM Agreement.

30.     On information and belief, Burroughs knowingly entered into the OEM Agreement in bad faith, or knowingly exploited the OEM Agreement and Relationship in bad faith, for the purpose of learning Panini's confidential information so that Burroughs could make its own check-scanner to compete with Panini in the check-scanner market.

31.     Pursuant to the OEM Agreement, Burroughs' use of Panini's confidential information was restricted to servicing the OEM Relationship.  REDACTED

REDACTED

# REDACTED

32.     On or about November 10, 2007, Burroughs revealed to Panini for the first time that it had developed, and intended to market and sell, a teller-side check scanner known as the SmartSource.  A picture of a SmartSource scanner is shown below:



1738592.1

33. On or about November 13, 2007, Burroughs introduced the SmartSource scanners to the market at the BAI Retail Delivery Show in Las Vegas, Nevada. According to a November 13, 2007 press release, Burroughs (then Unisys) "develops and assembles the new scanners in its Plymouth, Michigan facility to meet growing customer needs including speed, flexibility and onboard intelligence." A true and correct copy of the press release is attached as **Exhibit C**, and is available at http://www.unisys.com/unisys/news/detail.jsp?id=6500004. The Plymouth, Michigan facility is the same facility in which Burroughs assembled and serviced the Panini My Vision X scanners pursuant to the OEM Agreement.

34. On information and belief, on or about June 6, 2008, Burroughs announced that it would no longer offer Panini's My Vision X scanner.

35. In 2008, Burroughs and Panini North America agreed to terminate the OEM Relationship and let the OEM Agreement expire on December 31, 2009.

36. Pursuant to the OEM Agreement, Panini has an ownership interest in any inventions "related to" the My Vision X that Burroughs (then Unisys) personnel conceived or reduced to practice utilizing Panini's confidential information. REDACTED

:

REDACTED

# REDACTED

37. Over the course of the OEM Relationship, Burroughs personnel filed numerous patent applications on inventions related to the My Vision X utilizing Panini's confidential information. Those patent applications and issued patents are now assigned to—and seemingly owned solely by, Burroughs. For example, U.S. Patent Application No. 12/319,055, filed December 31, 2008 and issued as U.S. Patent 8,341,049, is entitled "Method for Controlling Feature Upgrades." During the course of the OEM Relationship, and pursuant to the OEM Agreement, Panini disclosed to Burroughs confidential information about methods for upgrading features of the My Vision X scanner. On information and belief, Burroughs' claimed upgrade invention was conceived or reduced to practice utilizing Panini's confidential information. A true and correct copy of U.S. Patent No. 8,341,049 is attached as **Exhibit D**.

38. REDACTED the Agreement required Burroughs (then Unisys) to negotiate in good faith with Panini to license any inventions related to Panini's My Vision X. Specifically, Section 13.6.3 states as follows:

# REDACTED

39. On information and belief, during the entirety of the OEM Relationship, Burroughs (then Unisys) owned U.S. Patent No. 6,546,396 (the "Burroughs Patent"), entitled "Document Processing System With a Multi-Platform Application Programming Interface." A true and correct copy of this patent is attached as **Exhibit E**. Burroughs (then Unisys) did not negotiate in good faith with Panini regarding a license to this patent during the OEM Relationship. Burroughs did not even disclose this patent to Panini during the OEM Relationship. Instead, Burroughs sued Panini North America, accusing Panini's My Vision X and Vision API of infringing this patent.

40. But for its violation of its obligation under the OEM Agreement to negotiate a license in good faith, Burroughs would not have been able to file its patent infringement lawsuit against Panini North America on October 30, 2012. In that lawsuit, pending in the federal court for the Eastern District of Michigan, Burroughs alleges that Panini North America infringes the Burroughs Patent. A true and correct copy of Burroughs' First Amended Complaint is attached as **Exhibit F**.

41. Burroughs accuses Panini of infringement of the Burroughs Patent through check scanners, including the My Vision X, and Vision API.

## COUNT I
## BURROUGHS' INFRINGEMENT OF PANINI'S '554 PATENT

42. Panini refers to and incorporates herein the allegations of paragraphs 1 through 41.

43. Burroughs has infringed and continues to infringe under 35 U.S.C. § 271, either literally or under the doctrine of equivalents, one or more claims of the '554 Patent by importing, making, using, selling, or offering to sell in the United States check scanners that include the

technology claimed in Panini's '554 Patent.  For example, Burroughs imports, makes, uses, sells, or offers to sell in the United States the SmartSource Professional, the SmartSource Expert, and the SmartSource Adaptive check scanners.  These scanners each include the technology claimed in the '554 Patent.

44. Service of this Complaint serves as actual notice to Burroughs of the '554 Patent and its infringement of the patent.

45. From at least the date of the filing of this Complaint, Panini has suffered and continues to suffer damages as a result of Burroughs' infringement of the '554 Patent.  Pursuant to 35 U.S.C. § 284, Panini is entitled to recover damages, including lost profits, in an amount no less than a reasonable royalty from Burroughs for its infringing acts.

46. Panini has suffered and continues to suffer irreparable harm as a result of Burroughs' infringement.  Burroughs' continued infringement of the '554 Patent will continue to irreparably harm Panini without adequate remedy at law unless Burroughs is enjoined by this Court.  Pursuant to 35 U.S.C. § 283, Panini is entitled to an order enjoining Burroughs from further infringement including an order that Burroughs cease importing, making, using, selling, or offering to sell in the United States infringing scanners, including the SmartSource Professional, the SmartSource Expert, and the SmartSource Adaptive check scanners.

## COUNT II
## BREACH OF CONTRACT

47. Panini refers to and incorporates herein the allegations of paragraphs 1 through 41.

48. Burroughs (then Unisys) and Panini entered into a valid and binding OEM Agreement on or about March 29, 2004.

49. Panini performed all its duties and obligations pursuant to the OEM Agreement.

50. Unisys materially breached several provisions of the OEM Agreement, which caused Panini to suffer damages.

51. For example, as set forth in paragraph 31 above, REDACTED the OEM Agreement required that Burroughs' use of Panini's confidential information disclosed under the OEM Agreement be restricted to performing its obligations under the OEM Agreement. But, on information and belief, Burroughs (then Unisys) used Panini's confidential information to develop products and technology that actually compete with Panini's technology, in violation of the OEM Agreement.

52. In addition, on information and belief, Burroughs applied for and received a patent on a method for upgrading features of a check scanner utilizing Panini's confidential information concerning Panini's methods for upgrading features of a check scanner.

53. On information and belief, Burroughs also developed the SmartSource scanner during the course of the OEM relationship with the benefit of Panini's confidential information about the My Vision X and related technology.

54. Also, as set forth in paragraph 36 above, REDACTED the OEM Agreement required that intellectual property relating to the My Vision X and related technology[1] that Burroughs personnel conceived of or reduced to practice utilizing Panini's confidential information was to be jointly owned by Burroughs and Panini. But, on information and belief, Burroughs used Panini's confidential information to conceive of or reduce to practice inventions

---

[1] Section 1.10 of the OEM Agreement defines the relevant technology as the PRODUCT as the current and follow-on manufactured versions of the PANINI "My Vision X Series" multifunctional document processor product supplied to UNISYS under this Agreement as described in Schedules A, C and I, and includes, except as specifically set forth otherwise in this AGREEMENT, the SOFTWARE, SPARE PARTS, ASSEMBLY KITS, ENHANCEMENTS and PRODUCT assembled by UNISYS from the ASSEMBLY KITS.

that it did not share with Panini. For example, on information and belief, Burroughs claims to own U.S. Patent No. 8,341,049 claiming technology that was conceived of or reduced to practice using Panini's confidential information.

55. Further, as set forth in paragraph 38 above, under REDACTED the OEM Agreement, Burroughs was obliged to negotiate in good faith for the licensing of Unisys inventions related to the Products to Panini. But Burroughs did not negotiate with Panini or offer a license to the Burroughs Patent (U.S. Patent No. 6,546,396), or even disclose its existence or any infringement issue to Panini during the entire OEM Relationship. Instead, Burroughs sued Panini North America in the Eastern District of Michigan claiming infringement of the Burroughs Patent.

56. As alleged in detail above, Burroughs failed to meet several of its obligations under the OEM Agreement and therefore materially breached the OEM Agreement.

57. Due to Burroughs' material breach of the OEM Agreement, Panini suffered, and continues to suffer, monetary damages in an amount to be proven at trial.

58. Due to Burroughs' material breach of the OEM Agreement, Panini suffered, and continues to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT III
## UNJUST ENRICHMENT

59. Panini refers to and incorporates herein the allegations of paragraphs 1 through 41.

60. Panini conferred several benefits upon Burroughs, and Burroughs knew it was receiving benefits from Panini. For example, Panini provided its confidential, proprietary

15

information regarding the design, manufacture, and operation of Panini's check scanners (including the My Vision X scanner) to Burroughs (then Unisys).

61. On information and belief, Burroughs knowingly entered into the OEM Agreement in bad faith, or knowingly exploited the OEM Agreement and Relationship in bad faith, for the purpose of learning Panini's confidential information so that Burroughs could make its own check-scanner to compete with Panini in the check-scanner market.

62. Burroughs knowingly retained the benefits of confidential information that Panini provided under circumstances for which it is unjust to do so without payment to Panini. For example, on information and belief, Burroughs used Panini's confidential information to design and develop its own products and services, including SmartSource, and further used Panini's confidential information to apply for and receive patents related to check-scanning technology.

63. Further, on information and belief, Burroughs knowingly retained benefits conferred by Panini in the form of Panini's confidential information by, for example, using Panini's confidential information to design and develop better products and services than it would have otherwise, and in a shorter time than it would have otherwise. Burroughs has used and continues to use these products and services to compete with Panini, to the detriment of Panini and to the benefit to Burroughs such that it is unjust for Burroughs to retain these benefits without payment.

64. Further, on information and belief, Burroughs knowingly retained benefits conferred by Panini in the form of Panini's confidential information by, for example, acquiring intellectual property rights, such as U.S. Patent No. 8,341,049, which claims technology that was conceived or reduced to practice using Panini's confidential information. It would be unjust for Burroughs to retain these benefits without payment.

## JURY DEMAND

65. Panini hereby requests a trial by jury in Dayton, Ohio, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiffs Panini S.p.A. and Panini North America respectfully request this Court to enter judgment in their favor and against Burroughs granting the following relief:

A. Judgment in Panini's favor on Count I that Burroughs has infringed and continues to infringe Panini's '554 Patent;

B. An award to Panini of damages adequate to compensate it for Burroughs' acts of patent infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284;

C. A grant of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against Burroughs enjoining Burroughs from further acts of patent infringement;

D. An award to Panini of its costs of suit and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case;

E. Judgment in Panini's favor on Count II that Burroughs has materially breached the OEM Agreement;

F. An award to Panini of damages in an amount to be proven at trial for Burroughs' material breach of contract;

G. Judgment in Panini's favor on Count III that Burroughs exploited the OEM Agreement and Relationship in bad faith, and that Panini conferred benefits upon Burroughs, and that Burroughs knowingly retained those benefits in circumstances where it would be unjust to do so without payment;

1738592.1

H. An award to Panini of damages in an amount to be proven at trial for Burroughs' unjust enrichment;

I. A grant of a permanent injunction against Burroughs enjoining Burroughs from asserting the Burroughs Patent (U.S. Patent No. 6,546,396) against Panini or Panini's customers;

J. An award to Panini of its cost of suit and reasonable attorneys' fees accrued defending against Burroughs' Eastern District of Michigan lawsuit asserting the Burroughs Patent (U.S. Patent No. 6,546,396);

K. A grant of permanent injunction against Burroughs enjoining Burroughs from disputing Panini's co-ownership of Burroughs intellectual property conceived or reduced to practice using Panini's confidential information, including U.S. Patent No. 8,341,049 and all related applications and patents, and enjoining Burroughs from asserting such intellectual property against Panini or Panini's customers; and

L. Any further relief that this Court deems just and proper.

Respectfully submitted,

/s/ James A. Dyer
James A. Dyer (0006824)
Kathryn M. Mack (0085529)
SEBALY SHILLITO + DYER
A Legal Professional Association
1900 Kettering Tower
40 North Main Street
Dayton, Ohio  45423-1013
(937) 222-2500
(937) 222-6554 (fax)
jdyer@ssdlaw.com
***Trial Counsel for Plaintiff***
***Panini S.p.A and Panini North America, Inc.***

1738592.1

CO-COUNSEL:

Paul J. Skiermont (*PHV application to be filed*)
Don Tiller (*PHV application to be filed*)
Wilhemina Tyler (*PHV application to be filed*)
Yi Chen (*PHV application to be filed*)
**SKIERMONT PUCKETT LLP**
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
(214) 978-6600 (telephone)
(214) 978-6601 (facsimile)
paul.skiermont@skiermontpuckett.com
don.tiller@skiermontpuckett.com
wilhemina.tyler@skiermontpuckett.com
yi.chen@skiermontpuckett.com
*Counsel for Plaintiff*
*Panini S.p.A and Panini North America, Inc.*

1738592.1