# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**PANINI S.P.A. and**
**PANINI NORTH AMERICA, INC.,**

                 **Case No. 3:13-cv-081**

        **Plaintiffs,**

                 **Judge Thomas M. Rose**

**-v-**

**BURROUGHS, INC.,**

        **Defendant.**

---

### ENTRY AND ORDER GRANTING IN PART WITHOUT PREJUDICE AND OVERRULING IN PART DEFENDANT BURROUGHS' MOTION TO DISMISS AND OVERRULING BURROUGHS' MOTION TO TRANSFER VENUE (Doc. #15)

---

Plaintiffs Panini S.p.A. and Panini North America, Inc. (collectively referred to hereinafter as "Panini") filed the Complaint in this matter against Burroughs, Inc. ("Burroughs"). Count I of Panini's Complaint is for infringement of U.S. Patent No. 6,966,554 B2 (the "'544 Patent"). (Doc. #5.) Count II is for breach of contract and Count III is for unjust enrichment. (Id.)

Now before the Court is a Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6) and To Transfer Venue Under 28 U.S.C. § 1404 brought by Burroughs. (Doc. #15.) This Motion is now fully briefed and ripe for decision. A relevant factual background taken from Panini's Complaint will first be set forth followed by the standard of review for 12(b)(6) motions to dismiss and an analysis of Burroughs' Motion To Dismiss. If necessary, this will be followed by the relevant legal provisions regarding Burroughs' Motion To Transfer and an analysis of the Motion To Transfer.

-1-

## RELEVANT FACTUAL BACKGROUND

### The Parties

Panini S.p.A. is an Italian corporation with its principal place of business in Torino, Italy. (Compl. ¶ 1.) Panini North America is a Delaware corporation with its principal place of business in Dayton, Ohio. (Id. at ¶ 2.) Panini North America is a wholly-owned subsidiary of Panini S.p.A. and is the exclusive distributor of Panini products and services in the United States and Canada. (Id. at ¶ 18.)

On or about February 2, 2010, Unisys Corporation "spun off" its entire Payment Systems business unit as Burroughs Payment Systems, Inc. which was later renamed Burroughs, Inc. (Id. at ¶ 4.) Burroughs, Inc. is a Delaware corporation with its principal place of business in Plymouth, Michigan. (Id. at ¶ 3.)

### Panini's Technology

Panini S.p.A. is a leading provider of document processing solutions, and in particular check scanners and processors. (Id. at ¶ 17.) Panini S.p.A. designs, manufactures and sells check scanners including the Vision X, I:Deal and wI:Deal scanners. (Id.) Panini S.p.A. also separately distributes to independent software vendors and application developers a proprietary application programming interface termed the Vision API code. (Id.)

From 1975 through 2002, Panini provided high-quality image-capture technology to its clients to help manage their paper documents. (Id. at ¶ 19.) Many banks use Panini's scanner technology to manage their checks. (Id.)

Panini S.p.A. designed a check scanner, termed the "My Vision X," that was introduced to the market in early 2004. (Id. at ¶ 20.) As part of the "My Vision X" project, Panini S.p.A.

designed its proprietary Vision API. (Id. at ¶ 21.) Independent software developers incorporate the Vision API into their document-processing applications and software that interface with Panini S.p.A.'s scanners.

Using the My Vision X technology, Panini obtained United States Patent No. 6,966,554 (the '544 Patent"). (Id. at ¶ 22.) The '544 Patent was issued on November 22, 2005 and is titled "Apparatus for Scanning Bank Checks, With An Improved Check Feed Device." (Id.) Panini S.p.A. currently holds all rights, title and interest in the '544 Patent. (Id.)

Burroughs learned of Panini's My Vision X check scanner in 2003. (Id. at ¶ 25.) In October of 2003, Burroughs and Panini S.p.A. entered into a nondisclosure agreement so that Panini could share certain confidential information so Burroughs could evaluate its interest in reselling Panini products. (Id. at ¶ 26.) In October of 2004, Burroughs and Panini North America entered into an original-equipment-manufacturer relationship (the "OEM Relationship") whereby Burroughs assembled, sold and serviced the My Vision X check scanner under the Unisys brand. (Id. at ¶ 27.)

The OEM Relationship was governed by the OEM Agreement. (Id. at ¶ 28.) Panini also provided Burroughs with Panini's Vision API and other confidential information pursuant to the OEM Agreement. (Id. at ¶ 29.)

**The OEM Agreement**

The OEM Agreement was between Panini North America and Unisys, and was executed on April 29, 2004. (Compl. Ex. B.) It gives Unisys a nonexclusive worldwide, transferable right and license to market, resell and distribute Panini's My Vision X Series multifunctional document processor and to use the associated software.

Unisys agrees that all right, title and interest in Panini S.p.A.'s or Panini North American's patents, trademarks, copyrights, trade secrets, know-how, processes and other intellectual property remains the sole property of Panini S.p.A. and/or Panini North America. However, Unisys shall own all right, title and interest in any and all inventions related to My Vision X that are conceived and reduced to practice solely by individuals at Unisys without using any Panini proprietary information.

The OEM Agreement also provides that information designated as proprietary by the disclosing party shall only be used by the receiving party in the performance of its obligations under the OEM Agreement and shall not be disclosed without the prior written consent of the disclosing party. This obligation ends three (3) years after the termination date of the OEM.

The OEM Agreement provides that its terms and conditions are binding upon, inure to the benefit of, and are enforceable by successors and permitted assigns. It also provides that none of the rights, interests or obligations of either party will be assigned or delegated by either party without the prior written consent of the other party, and any unauthorized assignment or delegation is null and void. Finally, the OEM Agreement provides that either party may assign or otherwise transfer its rights and obligations to its subsidiaries, affiliates or successors in interest (whether by purchase of stock or assets, merger, operation of law, or otherwise) of that portion of its business related to the subject matter of the OEM Agreement.

The OEM Agreement initially terminates on December 31, 2009, unless earlier terminated or cancelled. Thereafter, it automatically renews for consecutive three (3) year periods unless either party notifies the other party in writing, at least one (1) year prior to termination, that it will not renew.

-4-

Finally, the OEM Agreement includes a "Governing Law/Jurisdiction" clause. This clause provides that the OEM Agreement is to be construed, governed and interpreted in accordance with the laws, but not the rules relating to the choice of law, of the state of Delaware.

## The End of the Relationship

In 2008, Burroughs and Panini North America agreed to terminate the OEM Relationship. (Compl. ¶ 35.) They also agreed to permit the OEM Agreement to expire on December 31, 2009. (Id.)

## The Alleged Conflict

On November 10, 2007, Burroughs told Panini for the first time that Burroughs had developed and intended to market and sell a teller-side check scanner known as the SmartSource. (Id. at ¶ 32.) On November 13th of that same year, Burroughs introduced its SmartSource scanners to the market. (Id. at ¶ 33.) On June 6, 2008, Burroughs announced that it would no longer offer Panini's My Vision X scanner. (Id. at ¶ 34.)

Over the course of what Panini calls the OEM Relationship, Burroughs personnel filed numerous patent applications on inventions allegedly related to the My Vision X. (Id. at ¶ 37.) Panini now says that at least one of Burroughs' claimed inventions, an upgrade, was conceived or reduced to practice using Panini's confidential information. (Id.) Since this invention was conceived or reduced to practice using Panini's confidential information, Burroughs was required to negotiate in good faith with Panini to license it. (Id. at ¶ 38.)

According to Panini, during the entirety of the OEM Relationship, Burroughs owned U.S. Patent No. 6,546,396 entitled "Document Processing System With a Multi-Platform Application Programming Interface" (the "'396 Patent" (Id. at ¶ 39.) Burroughs did not disclose the '396

Patent to Panini during the OEM Relationship and did not negotiate in good faith with Panini regarding a license to this patent. (Id. at ¶ 39.)

Burroughs sued Panini North America on October 30, 2012 accusing Panini's My Vision X and Vision APT of infringing on the '396 Patent. (Id. at ¶ 39.) Panini now argues that, but for its violation of the OEM Agreement to negotiate a license in good faith, Burroughs would not have been able to file its patent infringement lawsuit. (Id. at ¶ 40.)

### STANDARD OF REVIEW FOR 12(b)(6) MOTIONS

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)(citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)).  Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004). Further, for purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. However, the

factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S.Ct. at 1965(citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). The factual allegations in the complaint, even if doubtful in fact, must do something more than merely create a suspicion of a legally cognizable right. *Id.*

The Sixth Circuit has noted that to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken,* 829 F. 2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Education.*, 76 F. 3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.*

In evaluating whether the plaintiff has stated a cognizable claim, the court generally may not consider matters outside of the pleadings. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). To this effect, Rule 12(b) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed R. Civ. P. 12(b).

The courts have clarified the scope of what may be considered without reaching 'matters outside of the pleadings.' A court may consider: (1) any documents attached to, incorporated by

-7-

or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred
to in the complaint and are central to the plaintiff's allegations, even if not explicitly
incorporated by reference; and (4) matters of which the court may take judicial notice. *Apex
Energy Group, LLC v. Apex Energy Solutions of Cincinnati, LLC*, No. 1:12cv46, 2013 WL
394464 at *2 (S.D. Ohio Jan. 31, 2013.) Under these circumstances, the court may consider
extraneous documents without requiring the conversion of the motion to one for summary
judgment. *Id.*

Notwithstanding, the ability of a court to consider supplementary documents is not
without limitations.  The Sixth Circuit has explained that "[w]hile documents integral to the
complaint may be relied upon, even if they are not attached or incorporated by reference, it must
also be clear that there exist no material disputed issues of fact regarding the relevance of the
document." *Mediacom Southeast LLC v. BellSouth Telecommunications.*, Inc., 672 F.3d 396, 400
(6th Cir. 2012) (citations, internal quotation marks, and alterations omitted).  Put otherwise, if
the authenticity, validity, or enforceability of a document is not in dispute, the court may
consider it on a motion to dismiss; but a genuine dispute as to the legal sufficiency of said
document requires the court to consider the issue under a motion for summary judgment
standard. *Id.*; *see also Ouwinga v. Benistar 419 Plan Services.*, 694 F.3d 783, 796-797 (6th Cir.
2012).

## ANALYSIS - MOTION TO DISMISS INFRINGEMENT CLAIM

Burroughs argues that Panini's infringement claim is overbroad, so at least part of it
should be dismissed. Specifically, Burroughs argues that Panini should not be able to pursue
allegations of inducement, contributory infringement, or any other variety of infringement when

-8-

it did not plead these claims according to the appropriate standards. Panini responds that it has

properly alleged that Burroughs infringes on the '554 Patent which Panini owns.

Panini has alleged that:

This Court has jurisdiction (compl. ¶¶ 5, 6);

Panini S.p.A. owns the '554 Patent (id. at ¶ 22);

Burroughs infringes the '554 Patent through importing, making, using,
selling or offering to sell the SmartSource Professional, the SmartSource
Expert and the SmartSource Adaptive check scanners (id. at 43),

Panini has given Burroughs notice of the infringement (id. at 44), and

Panini has demanded an injunction and damages (id. at ¶¶ 45, 46).

Full and properly completed forms contained in the Appendix of Forms to the Fed. R.

Civ. P. are sufficient to withstand attack under the Fed. R. Civ. P. *In re Bill of Lading

Transmission Processing System Patent Litigation*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Thus,

Form 18, one of those forms, is sufficient to withstand a motion to dismiss brought pursuant to

the Fed. R. Civ. P. *Id.*

Form 18 requires (1) an allegation of jurisdiction; (2) a statement that the plaintiff

owns the patent; (3) a statement that the defendant has been infringing the patent by making,

selling, and using the device embodying the patent; (4) a statement that the plaintiff has given

the defendant notice of the infringement; and (5) a demand for an injunction and damages. *K-

Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir.

2013).

Panini's Complaint includes all of the allegations required by Form 18. Thus, it

cannot be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**ANALYSIS OF MOTION TO DISMISS - BREACH-OF-CONTRACT CLAIM**

Burroughs argues that Panini's breach-of-contract action should be dismissed for four (4) reasons. Panini responds that its breach-of-contract action should not be dismissed. Each of Burroughs' arguments for dismissal will be addressed seriatim.

<u>**Successor Liability**</u>

Burroughs first argues that Panini's Complaint does not establish successor liability. Panini responds that it has pled facts from which the Court can reasonably conclude that Burroughs succeeded to the relevant liabilities associated with Unisys's Payment Systems business unit.

The general rule regarding successor liability is that when one company sells or transfers all of its assets to another, the purchaser does not become liable for debts and liabilities of the transferor. *Third National Bank In Nashville v. Showbiz Pizza Time, Inc.*, 60 F.3d 829 (Table), 1995 WL 385118 at * 3 (6th Cir. Jun. 27, 1995). However, there are four exceptions to this general rule. *Id.*

Panini argues that it has pled facts that satisfy one of these exceptions. The exception that Panini argues occurs when the purchaser expressly or impliedly assumes such obligations. *See Third National*, 1995 WL 385118 at *3.

Panini alleges that Burroughs breached the OEM Agreement. The OEM Agreement is between Panini North America and Unisys. Thus, for Burroughs to have breached the OEM agreement, it somehow must have assumed Unisys's liabilities.

Panini's Complaint makes one reference to Unisys. Paragraph 4 of Panini's Complaint is as follows:

-10-

On information and belief, on or about February 1, 2010, Unisys Corporation
spun off its entire Payment Systems business unit as Burroughs Payment Systems,
Inc. Burroughs, Inc. succeeded to all relevant obligations and liabilities of Unisys
Corporation related to the Unisys Payment Systems business unit. Throughout
this Complaint, "Burroughs" is used to refer to: the Unisys Payments Systems
business unit that was spun off of Unisys Corporation on or about February 1,
2010, Burroughs Payment Systems, Inc. And Burroughs, Inc.

Panini argues that one reasonable inference from this assertion is that, in assuming the

operations of the entire Unisys Payment Systems business unit, Burroughs expressly or

impliedly assumed the relevant rights and obligations of that business unit, including any

liabilities from the OEM Agreement. However, the Court cannot make this reasonable inference

from Panini's pleadings.

First, the term "spun off" is vague and Panini has offered no further details about its

meaning in the pleadings. Second, the pleadings offer no factual allegations, beyond a legal

conclusion, from which the Court can determine whether Burroughs expressly or impliedly

assumed any obligations from Unisys.

Panini argues that this Burroughs' allegation is "outside" of the pleading and not

supported by any competent evidence. However, as required by the law, the Court has only

considered matters "inside" the pleading. Further, Panini's argument that Burroughs' allegation

that Panini's Complaint does not establish successor liability  is "outside" of the pleading is

unintelligible as it relates to the Motion To Dismiss being considered.

Panini has not plausibly pled that Burroughs assumed any of Unisys's obligations.

Further, Panini has not plausibly pled that it had a contract directly with Burroughs.  Thus,

Panini's breach-of-contract claim against Burroughs must be dismissed.

### Liability for Breach of Subsection 13.6.3

-11-

Burroughs next argues that if it, arguendo, had assumed Unisys's obligations, the contract between Panini and Unisys does not require Unisys to offer to license a pre-existing patent. Panini responds that it pled facts from which the Court can reasonably conclude that Burroughs breached the OEM Agreement.

Panini pleads that Burroughs breached several provisions of the OEM Agreement. (Compl. ¶ 50.) Panini specifically identifies Sections 5.2 and 13.6 of the OEM Agreement.

Section 5.2 provides that:

CONFIDENTIAL INFORMATION disclosed under this AGREEMENT shall only be used by the receiving party in the performance of its obligations under this AGREEMENT, and shall not be disclosed, used or disseminated by the receiving party without prior written consent.

CONFIDENTIAL INFORMATION is defined in the OEM Agreement as:

…information that is proprietary to the disclosing party, and, if disclosed in tangible form, is marked by the disclosing party as "Proprietary," "Restricted" or "Confidential," or the disclosing party otherwise informs the receiving party of the confidential nature of the information…

Section 13.6.2 provides that inventions related to the My Vision X Series and the related technology that are conceived and/or reduced to practice jointly by Unisys and Panini are to be jointly owned by Unisys and Panini.

Section 13.6.3 provides that:

UNISYS and PANINI will negotiate in good faith for the licensing of UNISYS inventions relating to the My Vision X Series and related technology.

In its Complaint, Panini alleges that Unisys used Panini's confidential information to develop products and technology that actually compete with Panini's technology. (Compl. ¶ 51.) Panini also pleads that Burroughs applied for and received a patent on a method for upgrading features of a check scanner using Panini's methods for upgrading features of a check scanner.

(Id. at ¶ 52.) In addition, Panini pleads that Burroughs developed the SmartSource scanner during the course of the OEM Relationship with the benefit of Panini's confidential information about the My Vision X and related technology. (Id. at ¶ 53.) Panini also pleads that Burroughs used Panini's confidential information to conceive of or reduce to practice inventions that Burroughs did not share with Panini, for example U.S. Patent No. 8,341,049 (the "'049 Patent"). (Id. at ¶ 54.) Finally, Panini pleads that Burroughs did not negotiate in good faith with Panini regarding a license to the '396 Patent, or even disclose its existence.[1] (Id. at ¶ 55.)

Panini has pled that Unisys used Panini's confidential information without Panini's prior written consent, an alleged violation of Section 5.2 of the OEM Agreement. Panini has also pled that Burroughs did not negotiate in good faith about the licensing of Burroughs' inventions regarding the My Vision X technology, an alleged violation of Section 13.6.3 of the OEM Agreement. Thus, Panini's Complaint cannot be dismissed for a failure to make a breach-of-contract claim, assuming that Burroughs assumed Unisys's obligations.

**Vague Allegations Regarding Misappropriation of Confidential Information**

Burroughs next argues that if it, arguendo, had assumed Unisys's obligations, Panini cannot state a claim for breach of a confidentiality obligation without providing an indication of what confidential information was taken. Panini responds by pointing to allegations in its Complaint that Burroughs applied for and received a patent on a method for upgrading features of a check scanner using Panini's confidential information (compl. ¶ 52) and that Burroughs developed its SmartSource scanner during the course of the OEM Relationship with the benefit

---

[1]Panini's Complaint acknowledges that Patent '396 was issued in 2003 (compl. ¶ 11) which was before the OEM Agreement was signed.

of Panini's confidential information about the My Vision X and related technology (id. at ¶ 53).

Thus, while Panini does not specify the exact confidential information that was allegedly used, Panini does plead the nature and character of the confidential information that was allegedly used. This is enough to afford Burroughs fair notice of Panini's claim and the grounds upon which it rests. Panini's breach-of-contract claim cannot be dismissed on this basis, assuming that Burroughs assumed Unisys's obligations.

### Statute of Limitations

Burroughs final argument regarding Panini's breach-of-contract claim is that if it, arguendo, had assumed Unisys's obligations, the statute of limitations bars at least some of Panini's breach-of-contract claim. For this argument, Burroughs relies on the statute-of-limitations found in Delaware law and Section 24(a) of the OEM Agreement wherein the Parties agree that the OEM Agreement is to be construed, governed and interpreted in accordance with the laws of the state of Delaware. However, Section 24(a) also says that the OEM Agreement is not to be construed in accordance with Delaware's choice-of-law rules.

Irregardless, contractual choice-of-law clauses, such as Section 24(a), incorporate only substantive law. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Statutes of limitations are procedural provisions. *Id.* Thus, the procedural law of the forum state governs the statute-of-limitations for breach-of-contract claims and the law chosen by the parties governs the terms of the contract. *Id.*

In this case, the forum state is Ohio. Ohio law provided for a fifteen-year statute of limitations for breach of a written contract. *Id.* at 436(citing Ohio Rev. Code §2305.06). However, Ohio Rev. Code § 2305.06 has recently been revised (2011 Ohio Senate Bill No. 224

approved by the Governor on June 29, 2012) changing the limitations period from fifteen to eight years. However, for causes of action, such as this one, that accrued prior to the effective date of the change, the period of limitations is eight years from the effective date of the change or the expiration of the fifteen-year limitation in effect prior to the change, whichever occurs first.

In this case, assuming Panini's breach-of-contract action accrued on the signing of the OEM Agreement in April of 2004, the earliest it could run would be in April of 2019. Thus, Panini's breach-of-contract claim is not barred by the applicable statute of limitations, assuming that Burroughs assumed Unisys's obligations.

## Conclusion On Breach-of-Contract Claim

Panini has not plausibly pled that Burroughs assumed any of Unisys's obligations or that Panini had a contract directly with Burroughs. Thus, Panini's breach-of-contract claim against Burroughs is dismissed without prejudice.

Assuming, arguendo, that Burroughs assumed Unisys's obligations, Panini has plausibly pled a breach-of-contract action against Burroughs and the statute of limitations has not run on that claim. The analysis next turns to Panini's unjust enrichment claim.

## ANALYSIS - MOTION TO DISMISS UNJUST ENRICHMENT CLAIM

Burroughs argues that Panini's unjust enrichment claim should be dismissed for four (4) reasons. Each will be addressed seriatim.

## Successor Liability

Burroughs first argues that it is not liable for the unjust enrichment that Panini alleges against Unisys. While this may be accurate, Panini alleges unjust enrichment against Burroughs, not Unisys. (Compl. ¶ 60.)

To the extent that Panini's unjust enrichment claim is based upon the OEM Agreement, it is without merit. As determined above, Burroughs did not enter into the OEM Agreement attached to Panini's Complaint. Further, Panini has not satisfactorily pled that Burroughs assumed Unisys's obligations under the OEM Agreement.

However, to the extent that Panini's unjust enrichment claim against Burroughs is for actions taken by Burroughs, the unjust enrichment claim may be valid. Panini pleads that Burroughs knowingly retained the benefits of confidential information that Panini provided under unjust circumstances (compl. ¶ 62) by, for example, using Panini's confidential information to design and develop its own products and services in a shorter time than it would otherwise have (id. at ¶ 63) and by acquiring the '049 Patent (id. at ¶ 64).

Panini's unjust enrichment claim against Burroughs may not be dismissed based upon Burroughs' argument that Burroughs is not liable for the unjust enrichment that Panini alleges against Unisys. While, as determined above, Panini has not plausibly pled that Burroughs assumed any of Unisys's obligations or that Panini had a contract directly with Burroughs, Burroughs may nonetheless be liable to Panini for unjust enrichment.

### **Vague Allegations Regarding Misappropriation of Confidential Information**

Burroughs next argues that Panini alleges little or nothing about what confidential information Unisys might have taken and how this alleged enriched Unisys unjustly. This argument too fails.

-16-

Panini's unjust enrichment claim is against Burroughs, not Unisys. With regard to Burroughs, Panini pleads that Burroughs used Panini's confidential information to design its own products, including SmartSource and further used Panini's confidential information to acquire intellectual property rights such as the '049 Patent. Thus, while Panini does not specify the exact confidential information that was allegedly used, Panini does plead the nature and character of the confidential information that was allegedly used. This is enough to afford Burroughs fair notice of Panini's claim and the grounds upon which it rests.

Burroughs' argument that Panini alleges little or nothing about what confidential information Unisys might have taken and how this allegedly enriched Unisys unjustly is irrelevant in this instance because Panini's unjust enrichment claim is against Burroughs. Further, Panini has plausibly pled that Burroughs was unjustly enriched by the use of Panini's confidential information.

### Barred By Existence of Express Contract

Burroughs next argues that Panini cannot bring a claim for unjust enrichment when an express contract exists. This argument fails for at least two (2) reasons.

First, as determined above, Panini has not pled that it has a contract with Burroughs and Panini has not satisfactorily pled that Burroughs assumed any of Unisys's obligations under the OEM Agreement. Therefore, based upon Burroughs' arguments and this Court's determinations thus far, there is no express contract between Burroughs and Panini. Panini's unjust enrichment claim against Burroughs is not barred by the existence of an express contract.

Second, "because alternative pleading is permissible, a party may plead both a breach-of-contract claim and an unjust-enrichment claim without negating the validity of either claim."

-17-

*Cristino v. Ohio Bureau of Workers' Compensation*, 977 N.E.2d 742, 753 (Ohio Ct. App. 2012).

Thus, Panini may plead an unjust-enrichment claim against Burroughs. Although Panini may not

recover on its breach-of-contract claim against Burroughs, as is demonstrated above, it may

possibly recover from Burroughs on its unjust enrichment claim.

### Statute of Limitations

Burroughs' final argument regarding Panini's unjust-enrichment claim is that it is barred

by a three-year statute of limitations found in Delaware law. However, as more fully discussed

above, the Court is to look to Ohio law, not Delaware law, for an applicable statute of

limitations.

Ohio has a six-year statute of limitations on unjust-enrichment claims. *Miami Valley*

*Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp.2d 925, 933 (S.D. Ohio

2012)(citing Ohio Rev. Code § 2305.07). The Complaint in this matter was filed on March 14,

2013. Thus, any unjust-enrichment claims against Burroughs that accrued before March 14,

2007, are beyond the applicable statute of limitations.

Panini's Complaint does not specifically identify dates as to when its unjust-enrichment

claims against Burroughs accrued. Until further evidence is presented, the Court is unable to

dismiss any of these unjust enrichment claims.

### Conclusion On Unjust-Enrichment Claim

Panini's unjust-enrichment claim is against Burroughs, is plausibly pled against

Burroughs, is not barred by an express contract and cannot be dismissed at this time on statute-

of-limitations grounds. Therefore, Panini's unjust-enrichment claim against Burroughs remains

to be adjudicated.

**CONCLUSION ON MOTION TO DISMISS**

Panini's breach-of-contract claim is dismissed without prejudice. Panini's infringement and unjust-enrichment claims remain to be adjudicated. Burroughs' Motion To Dismiss is GRANTED IN PART WITHOUT PREJUDICE and OVERRULED IN PART.

**TRANSFER OF VENUE**

Panini's claims remaining in this Court are against Burroughs for infringement of the '554 Patent and unjust enrichment. Burroughs argues that these claims should be transferred to Michigan where a federal court is already handling a related case.

The related case referred to by Burroughs is an action brought by Burroughs in the United States District Court for the Eastern District of Michigan, Southern Division. (Case No. 5:12-cv-14804-JCO-MAR; hereinafter the "Michigan case".) This action is against Panini North America for direct and contributory infringement of Unisys's '396 Patent. Panini North America has answered this complaint and a scheduling conference before District Judge John Corbett O'Meara is set for June 25, 2013.

Panini responds that its infringement and unjust enrichment claims in this case should not be transferred to Michigan because Burroughs has not established that the balance of the relevant factors weighs strongly in favor of transfer.

**<u>Relevant Legal Provisions</u>**

Venue may be transferred pursuant to 28 U.S.C. § 1404 (a) "for the convenience of the parties and witnesses, in the interest of justice…." Further, a civil action may be transferred to any other district where it might have been brought. 28 U.S.C. § 1404(a).

The Supreme Court has said that the private interest of the parties includes the relative ease of access to sources of proof, the availability of compulsory process for attendance of the unwilling witness, the cost of obtaining the attendance of the willing witness, the possibility of a view of the premises and other practical problems that make a trial of the case easy, expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Public interest factors identified by the Supreme Court include court congestion, the burden of jury duty on people of a community that has no relation to the litigation, holding the trial in view and reach of persons affected by its outcome, and the local interest in having localized controversies decided at home, and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law governing the case. *Id.* at 508-09.

The Sixth Circuit has summarized 28 U.S.C. § 1404(a) to mean that a court should "consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interest of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

Transfer is not appropriate if the transfer merely shifts the burden of inconvenience. *Twenty First Century Communications, Inc. v. TechRadium, Inc.*, No. 2:09-cv-1118, 2010 WL 3001721 at *3 (S.D. Ohio Jul. 30, 2010). Further, there is a strong presumption in favor of a plaintiff's choice of forum. *Id.* Therefore, a defendant wishing to transfer venue has the burden to demonstrate that the balance of the factors to be considered strongly favors transfer. *Id.*

### Convenience of the Parties and Witnesses

-20-

Burroughs argues that the private factors favoring transfer derive from the facts that: (a) Burroughs is located in Michigan; (b) Burroughs came into existence as the result of an asset purchase from Unisys and (c) several knowledgeable people from Unisys are not currently with Burroughs.

Regarding the ease of access to sources of proof, this case will involve document-based evidence in addition to witness-based evidence. However, there are no accident scenes and there are no other sources of proof that cannot be transported. Any document-based evidence can be transported.

Panini has said that its records of operations are kept in Dayton. (Declaration of Michael Pratt ("Pratt Decl.") ¶ 20 May 28, 2013.) Thus, a transfer to the Eastern District of Michigan would merely shift any convenience regarding document-based evidence from Panini to Burroughs.

Regarding witness-based evidence, the inventors of the '554 Patent are Italians that presumably currently reside in Italy so the Southern District of Ohio at Dayton will not be significantly more convenient that the Eastern District of Michigan. Panini has not argued otherwise.

Burroughs argues that the Eastern District of Michigan would be more convenient for Unisys witnesses. Unisys is not directly involved in the remaining claims. Yet, former Unisys employees may be knowledgeable about Burroughs' alleged unjust enrichment and Burroughs alleged infringement of the '554 Patent.

At least some of the witnesses that Burroughs may wish to call, to wit, some former Unisys employees, are outside of the subpoena power of the Southern District of Ohio. (See

Declaration of Bruce Young ("Young Decl.") ¶¶ 11-21 May 2, 2013.) However, there is no indication if Burroughs contacted these witnesses regarding testimony in the Southern District of Ohio at Dayton or no indication regarding deposition testimony of these witnesses. Finally, Panini indicates that the individuals most knowledgeable about its U.S. operations and other relevant information are located in Dayton, Ohio. (Pratt Decl. ¶¶ 14, 17-19.) Thus, a transfer to the Eastern District of Michigan would merely shift any convenience regarding witness-based evidence from Panini to Burroughs.

### Interest of Justice

Burroughs argues that the case already pending in Michigan is between the same parties and involves similar subject matter. Paragraphs 6 and 8 of Panini's Complaint refer to check scanning and processing technology which, according to Burroughs, is the same technology at issue in the Michigan case. Paragraph 13 of Panini's Complaint indicates that Burroughs has sued Panini North American in the Eastern District of Michigan for infringement of the '396 Patent claiming that Panini's My Vision X and Vision API fall within the scope of the '396 Patent. Paragraph 16 of Panini's Complaint asserts that Panini is entitled to injunctive relief in the form of an order barring Burroughs from asserting the '396 Patent. Paragraphs 39 through 41 of Panini's Complaint assert that Burroughs owned the '396 Patent and did not negotiate in good faith with Panini regarding a license for the '396 Patent and that Burroughs now accuses Panini of infringement of the '396 Patent. Paragraphs 55 through 58 of Panini's Complaint make several assertions regarding its breach-of-contract claim. In its Prayer for Relief in this case, Panini asks the Court to enjoin Burroughs from asserting the '396 Patent and to award Panini costs and attorneys' fees accrued defending the Michigan lawsuit.

Burroughs also identifies several of its "expectations" regarding Panini in the Michigan lawsuit. Finally, Burroughs argues that this case and the Michigan lawsuit are so closely related that Panini would not have brought this lawsuit but for the Michigan lawsuit.

Burroughs final argument regarding the interest of justice is that transferring this case to Michigan will promote judicial economy. The judge already assigned to the Michigan lawsuit will invest time learning and understanding the check scanning technology that is the subject of both this case and the Michigan lawsuit. Burroughs also argues that having the entire matter in one court will prevent inefficiencies, duplication of costs and possible inconsistent rulings.

Panini argues that both Panini and this litigation have significant ties to the Southern District of Ohio at Dayton. As a result, there is a strong public interest in maintaining venue in this district. Panini North America is based in Dayton and manages all of Panini S.p.A.'s business in the United States. The harm from Burroughs' alleged infringement is felt by Panini in Dayton, where Panini employees 24 individuals. Finally, Panini argues that a comparison of the congestion of the U.S. District Courts for the Eastern District of Michigan and the Southern District of Ohio, based upon the number of cases, supports maintaining the litigation in the Southern District of Ohio.

## CONCLUSION ON TRANSFER OF VENUE

Burroughs has not met its burden of showing that the balance of the factors to be considered strongly favor transfer of this case to the Eastern District of Michigan. First, there is a strong presumption in favor of Panini's choice of forum. In addition, a transfer would merely shift any inconvenience regarding witness-based and document-based evidence from Burroughs to Panini. Finally, the interest of justice does not favor transfer.

-23-

This case and the Michigan case involve different technology, different patents and different causes of action. In the Michigan case, Burroughs accuses Panini of infringing on the '396 Patent entitled "Document Processing System With a Multi-Platform Application Processing Interface." In this case, Panini accuses Burroughs of infringing on the '554 Patent entitled "Apparatus for Scanning Bank Checks, With an Improved Check Feed Device." The Burroughs claim is related to Panini's computer technology and the Panini claim is related to Burroughs' mechanical technology. Thus, claim construction, validity and infringement of the two patents are factually distinct.

Panini's allegations in this case regarding the '396 Patent are either merely informative or irrelevant to the remaining claims. Finally, the court congestion data provided by Panini is not persuasive. No mention is made of the number or specific judicial officers at each location and the data does not specifically reference the Southern District of Ohio at Dayton.

Neither the convenience of the parties and witnesses nor the interests of justice weigh in favor of a transfer of venue. The Court does not and need not consider whether the Complaint in this matter might have been brought in the U.S. District Court for the Southern District of Michigan. Thus, Burroughs' Motion To Transfer Venue is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty Ninth Day of July, 2013.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT

JUDGE

Copies furnished to:

Counsel of Record

-24-